## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES KINGSBURY, Personal )
Representative of the Estate of and Next )
of Kin to RACHEL MARY )
KINGSBURY, DECEASED, )
            )
            Plaintiff, )
            )
vs. )      Case No. CIV-14-468-M
            )
WESTLAKE MANAGEMENT )
COMPANY, a Texas Corporation; )
RON LUSK, an individual; )
QC PROPERTY HOLDINGS, LLC, a )
Georgia limited liability company; and )
QC NURSING, LLC, a Georgia limited )
liability company, d/b/a Quail Creek )
Nursing and Rehabilitation Center, )
            )
            Defendants. )

## ORDER

Before the Court is defendants QC Property Holdings, LLC ("QC Property") and QC Nursing, LLC's ("QC Nursing") Motion to Dismiss, filed June 9, 2014. On June 30, 2014, plaintiff filed his response, and on July 22, 2014, QC Property and QC Nursing filed their reply.

I.     Introduction

On September 12, 2008, plaintiff James Kingsbury, personal representative of the estate of and next of kin to Rachel Mary Kingsbury, deceased, ("Kingsbury") initiated litigation in the District Court of Oklahoma County against Westlake Nursing Home Limited Partnership ("Westlake"), alleging that Westlake was liable for the death of Ms. Rachel Mary Kingsbury. Kingsbury obtained a verdict against Westlake on February 28, 2014, and judgment was entered on this verdict on May 8, 2014, in the amount of $349,427.23.

On May 8, 2014, Kingsbury filed the instant action.  Kingsbury alleges that QC Property and QC Nursing should be held liable for the May 8, 2014 judgment.  Specifically, Kingsbury alleges that QC Property should be held liable under a successor liability theory because QC Property is a "mere continuation" of Westlake and Westlake Management Company.  Kingsbury further alleges that QC Nursing should be held liable to the same extent as QC Property because QC Nursing is a "mere instrumentality" and "alter ego" of QC Property.  QC Property and QC Nursing now move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims against them for failure to state a claim.

II.      Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted).  Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at

678 (internal quotations and citations omitted). A court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations and citation omitted). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.    Discussion

QC Property and QC Nursing contend that Kingsbury has failed to state a claim of successor liability against QC Property. Specifically, QC Property and QC Nursing assert that Kingsbury has failed to plead facts to support the theory of "mere continuation." Further, QC Nursing contends that since QC Nursing can only be held liable to the extent that QC Property is held liable and since QC Property is not liable under the claim of successor liability, QC Nursing is not liable.

> As a general rule, when one company sells or otherwise transfers all its assets to another company, the successor is not liable for the debts and liabilities of the seller. The four exceptions to this rule are when:
> 1) there is an agreement to assume such debts or liabilities;
> 2) there is a consolidation or merger of the corporations;
> 3) the transaction was fraudulent in fact; or
> 4) the purchasing corporation is a mere continuation of the selling company.

*Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 300 (Okla. 2009). "[T]he exceptions to the general rule of successor non-liability exist to prevent the shareholders, officers, and directors of a corporation from eluding its debts and liabilities while maintaining control over its assets." *Id.* at 300-01.

In the case at bar, Kingsbury relies upon the mere continuation exception to the general rule of successor non-liability.

> The mere continuation exception covers a re-organization of a corporation. For this exception, the test is not whether there is a continuation of business operations, but whether there is a continuation of the corporate entity. To make this determination, we have looked to whether there is a common identity of directors, officers, and stockholders before and after the sale, whether there was good consideration for the sale, and whether the seller corporation continues to exist in fact. The bare *de jure* existence of the seller corporation after the sale is insufficient alone to establish that the successor corporation is not a mere continuation of the seller company.

*Id.* at 301-02.

Having carefully reviewed Kingsbury's Complaint, the Court finds that Kingsbury has failed to state a claim of successor liability against QC Property. Specifically, the Court finds that the allegations in the Complaint show that there is not a common identity of directors, officers, and stockholders between Westlake and QC Property. *See* Complaint at ¶¶ 3, 5, 6, 7, 13, 14, and 15. Additionally, the allegations in the Complaint show that there was good consideration for the sale, stating that the nursing home was sold for the sum of $5.8 million. *See* Complaint at ¶ 18. Finally, regarding whether Westlake continues to exist in fact, Kingsbury only makes the conclusory allegation that "Westlake Nursing Home Limited Partnership and Westlake Management Company ceased to exist in fact," with no additional factual support for this conclusory allegation. *See* Complaint at ¶ 24. Accordingly, the Court finds that Kingsbury's successor corporation liability claim against QC Property should be dismissed. Additionally, because Kingsbury's alter ego liability claim against QC Nursing is contingent on QC Property's liability, the Court finds that Kingsbury's alter ego liability claim against QC Nursing should be dismissed.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS QC Property and QC Nursing's Motion

to Dismiss [docket no. 14] and DISMISSES all claims against defendants QC Property Holdings,

LLC and QC Nursing, LLC.

**IT IS SO ORDERED this 31st day of July, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE